

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

DEC 22 2011

CLERK, U.S. DISTRICT COURT
by_____
              Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JANE McCARTHY,                       §
                                     §
          Plaintiff,                 §
                                     §
VS.                                  §   NO. 4:11-CV-356-A
                                     §
BANK OF AMERICA, NA,                 §
BAC HOME LOANS SERVICING, LP,        §
and FEDERAL HOME LOAN MORTGAGE       §
CORPORATION,                         §
                                     §
          Defendants.                §


<u>MEMORANDUM OPINION</u>
<u>and</u>
<u>ORDER</u>

Now pending in the above-captioned action are the motions of

defendants Bank of America, N.A. ("BOA"), BAC Home Loans

Servicing, LP f/k/a Countrywide Home Loans Servicing ("BAC"), and

Federal Home Loan Mortgage Corporation ("Freddie Mac") to dismiss

the complaint of plaintiff, Jane McCarthy, for failure to state a

claim.  After having considered the parties' filings, the record,

and applicable legal authorities, the court has concluded that

the motions should be denied.

I.

<u>Background</u>

The background of this case is as follows: Plaintiff Jane

McCarthy instituted this action by a pleading in the District

Court of Tarrant County, Texas, 67th Judicial District Court, on May 4, 2011, against BOA, BAC, and Freddie Mac (collectively, "defendants"), as Cause No. 67-252640-11. Defendants removed the case to this court on May 27, 2011. BOA and BAC filed a motion to dismiss on July 5, 2011, that was directed at plaintiff's state court petition. The court denied the motion to dismiss and granted leave to plaintiff to file an amended complaint.

Plaintiff's amended complaint ("Complaint") asserted the following claims against defendants: (1) breach of contract; (2) violations of the Texas Finance Code and the Texas Deceptive Trade Practices Act ("DTPA"); (3) unreasonable collection; (4) negligent misrepresentation and gross negligence; and (5) suit to quiet title. Plaintiff seeks actual and exemplary damages, an order for an accounting, and declaratory and injunctive relief to maintain possession and regain title to the property.

Plaintiff made the following allegations in the Complaint:

On May 28, 2004, plaintiff executed a note payable to Countrywide Home Loans, Inc. ("Countrywide") and a deed of trust covering plaintiff's property at 4617 Cougar Ridge Road in Fort Worth, Texas, 76126.[1] Compl. at 3. The deed of trust designated

---

[1]Although plaintiff references in her complaint the deed of trust as "Exhibit A, attached hereto and incorporated herein for all purposes," the deed of trust is not attached as Exhibit A to the Complaint. Instead, plaintiff attaches a letter from Bank of America, N.A., dated March 7, 2011, as Exhibit A. However, a copy of the deed of trust was attached to plaintiff's original state court pleading as an exhibit.

(continued...)

Countrywide, or any holder of the note who is entitled to receive payment of the note, as the "Lender." The function of the deed of trust was described as follows: "This Security Instrument secures to Lender: (i) the repayment of the Loan and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note." Notice of Removal, Ex. 1, Ex. A at 3.[2] It named Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as Countrywide's nominee, as beneficiary under the deed of trust. The limited capacity and function of MERS was explained in the deed of trust as follows:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Id. The note made no reference to MERS. MERS purported to assign the note and deed of trust to BOA. However, MERS did not

---

[1](...continued)
Consequently, the court will treat the text of the deed of trust as part of plaintiff's complaint for motion-to-dismiss purposes.

[2]The term "Security Instrument" refers to the deed of trust given by plaintiff to Countrywide as security for payment of the promissory note given by plaintiff to Countrywide in May 2004; the word "Borrower" refers to plaintiff; the word "Loan" refers to the debt evidenced by the note, plus added charges due under the note, and all sums due under the deed of trust.

own the note, thus it could not assign the note, and its

assignment of the deed of trust to BOA separate from the note was

of no force or effect.  When the note was purportedly assigned to

BOA, plaintiff was in default on payment of the note.

More specifically on the subject of separation of the note

from the deed of trust, and the lack of ownership of the note by

BOA when BOA and BAC conducted the foreclosure about which

plaintiff complains, plaintiff alleged:

> 30.  MERS is not the payee of the promissory note
> and MERS never held the promissory note.  The Deed of
> Trust does not provide that MERS could transfer the
> promissory note; therefore the language in the
> assignment of the deed of trust  purporting to transfer
> the promissory note is ineffective. Simply being a
> beneficiary or having an assignment of the deed of
> trust is not enough to be entitled to foreclose on a
> deed of trust.  For there to be a valid assignment for
> the purposes of foreclosure both the note and the deed
> of trust must be assigned. . . .
>
> 31.  An assignment of the deed of trust separate
> from the note has no "force." MERS never held the
> promissory note, thus its assignment of the deed of
> trust to BOA separate from the note had no force.  MERS
> had no separate agency contract with Countrywide
> regarding this loan.

Compl. at 12-13 (citations omitted).

Plaintiff further alleged that: In 2008, plaintiff filed for

bankruptcy and "began the loan modification process."  Id.

Between 2009 and April 2011, she communicated with Countrywide,

BOA, BAC, and Freddie Mac about making a loan modification, but

she continued to receive foreclosure notices from BOA in the
mail.  Id. at 4-8.  Then, on April 7, 2011, plaintiff came home
and "found a big orange sign from a realtor on her gate that
stated her house had been foreclosed on April 5, 2011."  Id. at
9.  Freddie Mac later sent plaintiff a notice to vacate letter,
dated April 9, 2011, informing plaintiff that Freddie Mac
purchased the home at the foreclosure sale, id. at 10, for
$166,242, id. at 11.  Plaintiff attempted to have the foreclosure
rescinded, but received no response from BOA.  Id. at 10.  At
present, "Freddie Mac is attempting to evict Plaintiff and sell
the property."  Id. at 11.

BAC, BOA, and Freddie Mac filed motions to dismiss the
Complaint for failure to state a claim for relief.  In direct
response to plaintiff's allegations that MERS had no authority to
assign the note to BOA, and that without ownership of the note
BOA had no authority to foreclose on plaintiff's property, BOA
asserted in its motion to dismiss that:

> The contention Defendants must be the holders of the
> Note to proceed with a foreclosure sale is incorrect--
> because Mortgage Electronic Registration Systems, Inc.
> ("MERS") had the power to foreclose and sell the
> Property, and had the power to assign these rights to
> [BOA], MERS's assignment to [BOA] was sufficient to
> give [BOA] the authority to foreclose.
>
> . . . .

According to Plaintiff, [BOA] has to be the holder of the Note and Deed of Trust to foreclose and MERS could not assign the Note, so [BOA] did and does not have the authority to foreclose. This argument is incorrect. Pursuant to the terms of the Deed of Trust-- which was executed by Plaintiff--MERS is named as the beneficiary and nominee for the originating lender, as well as its successors and assigns. In that same document, Plaintiff acknowledged MERS had the right to exercise any or all of the interests granted by Plaintiff in the Deed of Trust "including, but not limited to, the right to foreclose and sell the Property."

Br. in Supp. of BOA's Mot. at 7-8 (footnotes omitted).

Plaintiff filed a response, to which defendants filed a reply, and plaintiff filed a sur-reply.

II.

Analysis

Most of the grounds of the motions to dismiss appear to have merit, but there is a major impediment to the granting of the motions. As the United States Supreme Court so clearly explained approximately 140 years ago:

The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.

Carpenter v. Longan, 83 U.S. 271, 274 (1872) (footnote omitted).

This basic proposition has often been reaffirmed. See Baldwin v. State of Mo., 281 U.S. 586, 596 (1930) (Stone, J., concurring); National Live Stock Bank v. First Nat'l Bank, 203 U.S. 296, 306

(1906); <u>Kirby Lumber Co. v. Williams</u>, 230 F.2d 330, 336 (5th Cir.
1956); <u>In re Veal</u>, 450 B.R. 897, 916-17 (B.A.P. 9th Cir. 2011);
<u>In re Vargas</u>, 396 B.R. 511, 516 (Bankr. C.D. Cal. 2008); <u>In re
Leisure Time Sports, Inc.</u>, 194 B.R. 859, 861 (B.A.P. 9th Cir.
1996); <u>Bellistri v. Ocwen Loan Servicing, LLC</u>, 284 S.W.3d 619,
623 (Mo. Ct. App. E.D. 2009).

If the holder of the deed of trust does not own or hold the
note, the deed of trust serves no purpose, is impotent, and
cannot be a vehicle for depriving the grantor of the deed of
trust of ownership of the property described in the deed of
trust.  The sole purpose of the deed of trust is to secure
payment of the note.  The very, and sole, purpose of a
foreclosure sale pursuant to the deed of trust is to obtain funds
for payment of the note.  If the holder of the deed of trust does
not own or hold the note, and there were to be a foreclosure
under the deed of trust, there is no assurance that the proceeds
of the foreclosure would be used for the purpose intended by the
deed of trust, i.e., to be applied as payment of, or on, the
note.  That is not to say that the owner or holder of the note
cannot arrange for an agent or nominee, acting on its behalf, to
conduct a foreclosure for the benefit of the owner or holder of
the note.  But that is quite a different proposition from
assertions that the holder of the deed of trust who does not own

or hold the note has the power to transfer the note from the original note holder to another and that an entity that does not own or hold the note can conduct a foreclosure under the deed of trust.

The court disagrees with the contention of BOA that BOA did not have to be the owner or holder of the note to proceed with the foreclosure sale.  The reliance by defendants on Chapter 51 of the Texas Property Code is misplaced.  Procedures outlining the steps and requirements for a foreclosure are contained in Chapter 51.  Under the Property Code, MERS was a mortgagee based on either the definition of a "book entry system," Tex. Prop. Code §§ 51.0001(1) (defining "book entry system") and (4) (defining "mortgagee"), or alternatively, the definition of a "holder of a security instrument," id. §§ 51.0001(4) and (6) (defining "security instrument" as a "deed of trust, mortgage, or other contract lien on an interest in real property").  Once MERS assigned its interest in the deed of trust to BOA, BOA became the "holder of a security instrument" and was therefore a "mortgagee."  Id.  The Property Code states that a "mortgage servicer," such as BAC, "may administer the foreclosure of property under Section 51.002 on behalf of a mortgagee, if:

> (1) the mortgage servicer and the mortgagee have entered into an agreement granting the current mortgage servicer authority to service the mortgage; and

(2) the notices required under Section 51.002(b)
disclose that the mortgage servicer is representing the
mortgagee under a servicing agreement with the
mortgagee and the name of the mortgagee and:

    (A) the address of the mortgagee; or

    (B) the address of the mortgage servicer, if
    there is an agreement granting a mortgage
    servicer the authority to service the
    mortgage.

Id. § 51.0025 (titled "Administration of Foreclosure by Mortgage

Servicer").  However, inherent in the procedural steps outlined

in the Texas Property Code is the assumption that whatever entity

qualifies as a "mortgagee" either owns the note or is serving as

an agent for the owner or holder of the note; and, the statute

assumes that when a foreclosure is conducted by someone other

than the owner or holder of the note, the person conducting the

foreclosure will be acting as agent or nominee for the owner or

holder.[3]

    Otherwise, the Texas statutory law would make no sense, and

would be directly at odds with long-standing, basic principles

governing the relationship between real estate borrowers, on the

one hand, and their corresponding secured real estate lenders, on

---

[3]The legislative history confirms that all the Legislature intended to do was to make procedural changes, with no changes in substantive Texas law. See House Comm. on Financial Institutions, Bill Analysis, Tex. H.B. 1493, 78th Leg., R.S. (2005).

the other.  As the  Missouri Court of Appeals so cogently

explained in Bellistri v. Ocwen Loan Servicing, LLC:

> Generally, a mortgage loan consists of a
> promissory note and security instrument, usually a
> mortgage or a deed of trust, which secures payment on
> the note by giving the lender the ability to foreclose
> on the property. Typically, the same person holds both
> the note and the deed of trust.  In the event that
> note and the deed of trust are split, the note, as a
> practical matter becomes unsecured.  Restatement
> (Third) of Property (Mortgages) § 5.4. Comment.  The
> practical effect of splitting the deed of trust from
> the promissory note is to make it impossible for the
> holder of the note to foreclose, unless the holder of
> the deed of trust is the agent of the holder of the
> note.  Without the agency relationship, the person
> holding only the note lacks the power to foreclose in
> the event of default.  The person holding only the deed
> of trust will never experience default because only the
> holder of the note is entitled to payment of the
> underlying obligation.  The mortgage loan became
> ineffectual when the note holder did not also hold the
> deed of trust.

284 S.W.3d at 623 (citation omitted).  Also pertinent is the

holding of the bankruptcy court for the District of Idaho in In

re Wilhelm that the language of a deed of trust such as the one

at issue in the instant action does not give MERS authority to

transfer the promissory note secured by the deed of trust.  407

Br. 392, 404 (Bankr. D. Idaho 2009).

There might well be a way defendants can show in support of

an appropriate motion for summary judgment the facts necessary to

establish propriety of the foreclosure at issue.  However, there

is nothing in the record before the court at this time

establishing that plaintiff cannot prevail on her theory that the foreclosure on her property was improper because it was conducted by, or at the behest of, BOA at a time when BOA did not own or hold the note that was secured by the deed of trust pursuant to which the foreclosure was conducted.

Therefore,

The court ORDERS that such motions to dismiss be, and are hereby, denied.

SIGNED December 22, 2011.

JOHN MCBRYDE
United States District Judge

11